HUI LIU, ESQ. (SBN 349739)
LAW OFFICE OF MARY LIU
17588 ROWLAND STREET, A186
CITY OF INDUSTRY, CA 91748
TEL: (626) 810-3799
EMAIL:  MARYLIUESQ@GMAIL.COM

ATTORNEY FOR PLAINTIFF,
JENNIFER YANG also known as MEI HWA YANG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JENNIFER YANG also known as MEI HWA YANG, an individual,

Plaintiff,

vs.

HERBERT PAN also known as LIANG PAN also known as HERBERT LIANG PAN, an individual; PA PING HSU also known as DIANA HSU also known as DIANA PAN also known as PA PING HSUPAN also known as DIANA HSU PAN, an individual; CHIANG CHIAYUN, an individual, YICHONG HSU also known as ERIC HSU, an individual; CHENGMEI LEE, an individual; and DOES 1 through 50, inclusive

Defendants.

Case No. 5:23-CV-01904

**COMPLAINT FOR:**

1. Violation of Federal Racketeer Influenced and Corrupt Organizations ("RICO") Sections of Title IX of the Organized Crime Control Act of 1970 18 U. S. C. §§ 1961 *et. seq*.;
2. Fraud & Deceit;
3. Fraudulent Concealment;
4. Negligent Misrepresentation - Count 1;
5. Negligent Misrepresentation - Count 2;
6. Violation of California Penal Code §§484,496 (c), and 532;
7. Intentional Interference with Contractual Relations;
8. Violation of Foreign Corrupt Practices Act of 1977 (FCPA) 15 U.S.C. § 78dd-1, et seq.;
9. Violation of California False Advertising Law - Business and Professions Code § 17500;
10. Violation of California Business

and Professions Code §§ 17200 et seq.;

11. Civil Conspiracy;
12. Intentional Infliction of Emotional Distress;
13. Negligent Infliction of Emotional Distress;
14. Temporary and Permanent Injunctive Relief
15. Declaratory Relief; and
16. Unjust Enrichment.

**Jury Trial Demanded**

## COMPLAINT

Comes now, Plaintiff JENNIFER YANG also known as MEI HWA YANG ("Plaintiff") by and through undersigned counsel, hereby files this Complaint against Defendants HERBERT PAN also known as LIANG PAN also known as HERBERT LIANG PAN, an individual; PA PING HSU also known as DIANA HSU also known as  DIANA PAN also known as PA PING HSU PAN also known as DIANA HSU PAN, an individual; CHIANG CHIAYUN, an individual, YICHONG HSU also known as ERIC HSU, an individual; CHENGMEI LEE, an individual; and DOES 1 through 50, inclusive (Collectively "Defendants") and alleges:

## JURISDICTION AND VENUE

1.     Defendants are subject to the jurisdiction of this Court. Each Defendant has committed tortious and fraudulent acts in this District, within the State of California, throughout the United States and has caused damages to victims nationwide and abroad. The individual Defendants have, at all relevant times, also been engaged in continuous and systemic business in the State of California and throughout the country, and/or have committed tortious acts in this state and throughout the country that have damaged Plaintiff. In accordance with 18 U.S.C. §

1965(a) and (b), the Defendants are subject to this Court's jurisdiction in that they "transact affairs" in California and "the ends of justice require that [they] …. be brought before the Court[.] See U.S.C. § 1965[a] and [b]).

2.      This Court has personal jurisdiction over defendants pursuant to U.S.C. § 1965[b], "the Court may cause such parties to be summoned, and process for the purpose may be served in any judicial district of the United States by the marshal thereof." (U.S.C. § 1965[a] and [b]).

3.      Because Plaintiff asserts claims pursuant to the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, this Court has jurisdiction over this action, pursuant to 28 U.S.C. §1331. The Court has supplemental jurisdiction over the pendent state claim pursuant to 28 U.S.C. §1367.

4.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) and (c) and 18 U.S.C. § 1965(a) and (b), because a substantial number of the acts and transactions that precipitated Plaintiff's claims occurred within this District. Defendants did (or solicited) business, and transmitted communications by mail or wire, relating to their illegal scheme, in this district; transacted their affairs, in this judicial-district; and committed wrongful acts in this district, which have directly impacted the general public (of this district), and the ends of justice do require that parties residing in other districts be brought before this Court.

## THE PARTIES

5.      Plaintiff JENNIFER YANG also known as MEI HWA YANG ("Plaintiff" or "YANG") is a citizen of the State of California and resides within this judicial District.

6.      Defendant HERBERT PAN also known as LIANG PAN also known as HERBERT LIANG PAN ("HERBERT") is a resident of the State of California and resides and transacts business within this judicial District. HERBERT is the

owner of a multi-level marketing business named iHealth Innovative Tech Corp ("iHealth").

7.     Defendant PA PING HSU also known as DIANA HSU also known as DIANA PAN also known as PA PING HSU PAN also known as DIANA HSU PAN, ("DIANA") is a resident of the State of California within this judicial District. DIANA worked with HERBERT to operate iHealth.

8.     Defendant CHIANG CHIAYUN ("CHIANG"), an individual, at all relevant times herein, was and is a resident of the Taiwan, who worked with HERBERT and DIANA to operate iHealth's illegal stream of international commerce between United States and Taiwan and participated in the RICO activities alleged in this Complaint.

9.     YICHONG HSU also known as ERIC HSU ("ERIC"), an individual, at all relevant times herein, was and is a resident of the Taiwan, who worked with HERBERT and DIANA to operate health's illegal stream of international commerce between United States and Taiwan and participated in the RICO activities alleged in this Complaint.

10.    Defendant CHENGMEI LEE ("LEE"), an individual, at all relevant times herein, was and is a resident of the Taiwan, who worked with HERBERT and DIANA to operate iHealth's illegal stream of international commerce between United States and Taiwan and participated in the RICO activities alleged in this Complaint.

11.    Each Defendant was a separate legal entity. However, at all times relevant hereto, Defendants were the agents, managing agents, supervisors, co-conspirators, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, conspiracy, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants.

## GENERAL ALLEGATIONS

12.    This action is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, *et. seq*., ("RICO"). It arises out of a scheme perpetrated by Defendants, who have been conducting an illegal operation of a multi-level marketing ("MLM") business that deceived general public including Plaintiff YANG to invest time and money in a network marketing company named I HEALTH INNOVATION TECH CORP. ("iHealth"), a California corporation, entity number C4246290.

13.    IHealth was established by Defendants HERBERT and DIANA on February 19, 2019.

14.    Acting out of a self-professed interest to help others become "entrepreneurs," the Defendants used a sophisticated scheme to recruit distributors to sell iHealth distributorships and products in the Chinese communities across the United States and Asia by purporting to teach them how to run a legitimate direct-selling business on behalf of iHealthby claiming it is an e-commerce business (the "iHealth Business System").

15.    The fraudulent activities conducted by Defendants, as with so many schemes, lured Plaintiff and all others in similar situations to market iHealth health products through (1) false product information; and (2) illegal marketing channels (the "Schemes").

16.    Plaintiff and all others in similar situations are the victims, who run their independent distribution businesses for the health products without knowing the illegal and fraudulent nature of the business.

17.    Defendants accomplished their scheme by falsely advertising the ingredients of the iHealth products and by concealing the facts that the ingredients of the products are synthesized but not natural.

18.     The above-discussed statements made by Defendants are deceptive claims and falsely advertised to the public. Defendants willfully violated California False Advertising Law ---Business and Professions Code § 17500.

19.     Defendants also accomplished their scheme by encouraging Plaintiff and all others in similar situations to conduct business in regions and countries where iHealth has no legal authorization to do business such as Taiwan and China.

20.     Defendants have operated and promoted their fraudulent schemes throughout the United States through the use of the U.S. mail and interstate wire communications. The scheme generated profits to each of them.   The scheme operated for at least three (3) years and still operates. Through their creation and operation of their schemes, Defendants specifically intended to, and did in fact, defraud their distributors — including Plaintiff YANG.

21.     Plaintiff YANG, was and at all relevant times, is a merchant in the jewelry business. In or about 2005, Plaintiff YANG established her jewelry store "Yangspearl Co." in Temple City, Los Angeles and has been operating the jewelry business for eighteen (18) years.

22.     On January 12, 2020, by and through a friend, Sophia Wang, YANG became a member of iHealth. At the time YANG joined iHealth, Defendants represented to Plaintiff that iHealth sells its products through a cross-border e-commerce online marketing model, a global network system.

23.     Soon after Plaintiff became a member of iHealth, Defendants instructed Plaintiff to utilize her good networking system in Taiwan and start a distributorship system for iHealth in Taiwan for the purpose of marketing iHealth products in Taiwan.  Defendants further instructed Plaintiff YANG to establish the system with a separate iHealth membership account.

24.     Unbeknownst to the illegal nature of Defendants' representation, Plaintiff did what Defendants instructed her to do immediately and established a

marketing channel to recruit down-line distributors in Taiwan and to sell iHealth products in Taiwan.

25. The distributorship system in Taiwan was quite successful. On September 20, 2020, because of the increasing number of members in her Taiwanese team, which grew from zero (0) to a few dozen, Plaintiff YANG named the team the "Love the Health& Win the World Team" (the "Taiwan Team").

26. At the request of a Taiwanese member, Plaintiff traveled to Taiwan to assist in the further development of the Taiwan Team. Plaintiff YANG stayed in Taiwan for more than six (6) months.

27. By this time, the Taiwan Team has grown to more than 4,000 members. Thereafter, for the next three (3) years, Plaintiff YANG traveled back and forth between the United States and Taiwan to promote iHealth distributorship and products in Taiwan.

28. In or about March 2021, Defendants listed Plaintiff YANG as one of the company's "global market consultants" (the "Consultants").

29. However, all of the more than twenty (20) consultants are actually just the leadership representatives of each team and have no substantial "consultant" role, position, power, and rights. The Consultants do not draw any "consultant" salary or fees from iHealth.

30. The consultants are only the conduit between Defendants and the distributors who take instructions from Defendants and then relay those instructions to their respective team members.

31. On April 1, 2022, a Taiwan Team member, Chen Xinquan, received a summons and complaint from a Taiwanese government agency called "Fair Trading Commission" with criminal allegations and prosecutions.

32. The basis for the prosecutions was premised on the facts that (1) iHealth's failure to register its operations with Taiwan Fair Trade Commission; (2)

iHealth's failure to make reports to the "Fair Trade Commission" regarding its MLM operations in Taiwan; and (3) iHealth is in violation of the "Taiwan Multi-Level Marketing Management Act."

33.    Subsequently, other Taiwan Team members, Chen Xinquan, LEE, ERIC, Tu Yongsheng, and many others, were also summoned by the Taiwan Fair Trade Commission to participate in the investigations of iHealth violations.

34.    In order to ensure Taiwan Team members would continue to promote iHealth products in Taiwan, Defendants "instructed" Plaintiff YANG to be the scapegoat by taking the criminal responsibility for promoting iHealth in violation of Taiwanese laws.

35.    Defendants further ensured Plaintiff YANG that all fines will be paid by iHealth's corporate funds and further promised Plaintiff YANG that once she bore the criminal responsibility for the illegal activities, iHealth will immediately register with Taiwanese government to acquire all necessary licenses, and to become a legal direct selling company in Taiwan.

36.    In light of hoping that she can continue doing her MLM business with iHealth in Taiwan legally, she relied on Defendants' representations and promises. Plaintiff YANG took the blame. As a result, the Taiwanese Fair Trade Commission prosecuted Plaintiff YANG, imposed a fine of NT$300,000 on her and another NT$250,000 for other related fees/penalties, for a total of NT$550,000 (approximately equivalent to $17,000).

37.    Defendants instructed Plaintiffs to pay for the entire amount in Taiwan and iHealth will reimburse the funds to her.

38.    Thereafter, on June 2, 2022, Taiwan media outlets such as Liberty Times began to publish iHealth's illegal activities, which included Plaintiff's name and her involvement in the illegal activities.

39.     After being fined by the Taiwanese government and illegal activity reports published in the newspapers, Plaintiff then immediately stopped promoting all iHealth products in Taiwan.

40.     Taiwan Fair Trade Commission also ordered Plaintiff that she must wait until iHealth completed all steps to become a legally operating MLM entity in Taiwan, Plaintiff is refrained from conducting any business related to iHealth. Otherwise, Plaintiff will face further prosecutions and punishments by Taiwanese authorities (the "Order").

41.     Plaintiff is in full compliance with the Order and has not been doing any business related to iHealth in Taiwan while the Order against her is in effect.

42.     On June 20, 2022, right after Plaintiff YANG returned to the United States, in several occasions, she requested Defendants to complete all steps to make iHealth become a legally operating MLM entity in Taiwan.  However, all requests were ignored by Defendants.

43.     Plaintiff then realized that Defendants have defrauded her by a well calculated scheme of (1) luring Plaintiff YANG into doing the iHealth illegal activities in Taiwan; (2) letting Plaintiff bear all penalties and punishments imposed by Taiwanese government on behalf of iHealth; (3) using Plaintiff as a scapegoat to allow iHealth to continue to conduct its illegal business in Taiwan; (4) instructing three leading (3) members of "Taiwan Win-Win World Team", Defendant CHIANG, ERIC, and LEE, to force Plaintiff to bear all criminal responsibilities under Taiwan's justice; and (5) letting Plaintiff YANG face all the consequences of the continuance of the illegal business activities conducted by iHealth and its Taiwanese members in Taiwan.

44.     Because of Defendants' fraudulent schemes, Plaintiff YANG's personal and business reputation has been seriously damaged since June 2, 2022, by the illegal activities orchestrated by Defendants.

45.     As a result, Plaintiff' jewelry store (Yangspearl Co.) lost a great deal of business.

46.     Moreover, on September 27, 2022, Plaintiff YANG was contacted multiple times by Taiwan Northern District Taxation Bureau.  They requested Plaintiff to provide the following information and to respond to these specific requests: (1) provide documentation regarding iHealth's legal status as a business entity in Taiwan; (2) provide iHealth's "unified number" to the Taiwanese government authority; and (3) submit the iHealth Taiwan Team membership roster, down-line list and bonus distribution, and income information to the Taiwanese government authority.

47.     Plaintiff YANG was not able to comply with these requests and could not provide any responses to the Taiwanese government authorities because Defendants never provided her with the necessary information for her to do the mandatory responses.

48.     On November 12, 2022, Defendants invited Plaintiff YANG to the iHealth headquarters for a brief meeting, just before her upcoming trip to Taiwan to deal with the crisis there.  During the meeting, Plaintiff YANG, again, requested Defendants to take the necessary steps to complete the legal registration of iHealth in Taiwan.  This time, Defendants made it clear that the logistical operations of iHealthin Taiwan were running smoothly, and therefore, the legalization process was not considered.

49.     Plaintiff took a hard hit physically and financially by Defendants' decision of continuing its illegal operations in Taiwan because she now faces the dual risks of losing her personal financial gains in the iHealth MLM business and the potential of facing imprisonment in Taiwan.

50.     On November 11, 2022, as soon as Plaintiff YANG arrived in Taiwan, she was immediately served with a "Criminal Summons and Complaint" from the

Taiwan District Prosecutor's Office.  The complaint consists of three (3) criminal counts in total, and the criminal action is still pending.

51.   Defendants' also conducted the same illegal activities in China. Defendants utilized the same method in Taiwan to deceive members of iHealth in China.

52.   Defendants also made false representation to iHealth members that iHealth has an annual revenue of $37,000,000.00, and that Taiwan and China are accounted for 80% of the revenue.

53.   However, because the illegal nature of the iHealth operations in Taiwan and China, all commissions owed to members in the regions were paid through illegal channels, which constitute money laundering through mail fraud and wire fraud.

54.   Moreover, because of the illegal nature of the iHealth operations in Taiwan and China, Plaintiff's filing of her income taxes in the United States has become very difficult.

55.   In order to explore the Chinese market, Defendants instructed their Chinese American distributors to recruit Chinese nationals to become iHealth distributors without obtaining legal authorization from the Chinese and Taiwanese governments.

56.   Moreover, Defendants consistently promote iHealth recruiting events in Taiwan and China.  They made hefty profits in cash from the recruitments and utilized multiple channels to bring their profit back to the United States for them. Their conduct violates foreign laws and constitutes money laundering and tax evasion.

57.   Defendants' conduct violated Foreign Corrupt Practices Act of 1977 (FCPA) 15 U.S.C. § 78dd-1, et seq.

58.    On July 1, 2023, Plaintiff YANG discovered that Defendants had removed her from all iHealth WeChat groups, including the iHealth consultant group, and revoked her qualification as an iHealth consultant.

59.    On July 1, 2023, Defendants suddenly shutdown Plaintiff YANG's membership account in the midst of the criminal investigations conducted by the Taiwan Fair Trade Commission and the Court.  By doing so, Defendants stripped Plaintiff YANG's iHealth perpetuate commission income of approximately $15,000 per month, and they kept the funds for their own benefit.

60.    On July 19, 2023, soon after Plaintiff YANG returned to the United States, she discovered that her iHealth membership account was shut down by Defendants.

61.    On August 1, 2023, Defendants sent a "litigation hold" letter to Plaintiff.

62.    Defendants' wrongful conducts constitute intentional interference of Plaintiff's contractual relationship with iHealth.

63.    There is existence of a valid contract between Plaintiff and iHealth, a third party.

64.    As the president and the high rank officer of iHealth, Defendants HERBERT and DIANA have knowledge of the contract.

65.    Defendants' intentional acts were designed to disrupt the contractual relationship between Plaintiff and iHealth.

66.    Defendants' action caused actual disruption of the contractual relationship between Plaintiff and iHealth.

67.    Defendants' disruption caused damages to Plaintiff resulting damage.

68.    When Defendants made the representations, they knew them to be false.

69.     Defendants also employed a similar scheme to defraud another iHealth member, Jessica Sun ("SUN"). SUN was one of the highest-ranking members of iHealth.  At the time SUN was terminated by iHealth for an immaterial violation of the terms of policy and procedure, her monthly commission was approximately $60,000.00.

70.     SUN filed a class action lawsuit against HERBERT, DIANA, and iHealth in the Superior Court of California, Central District, Case No. 23STCV04408 (the SUN Class Action Lawsuit").

71.     In the SUN Class Action Lawsuit, Jessica, as named plaintiff, alleged that "Defendants operate a multilevel marketing health supplement company that targets Chinese immigrants. It is at heart a *Ponzi* scheme in violation of Penal Code section 327, that continues operating only because its "affiliates" (the name given to customers like plaintiff JESSICA SUN) get denied the compensation promised by Defendants who use various methods of trickery, subterfuge, and fraud to avoid payment…""SUN is one such immigrant victim from China, though she is informed that immigrants from other areas such as Taiwan and Hong Kong have been targeted. During that time Plaintiff JESSICA SUN and many hundreds of people like her were solicited by the Defendants or their agents, or by other people, to pay money to participate in what was represented to be a legitimate multilevel marketing company under the auspices of "I Health" and/or its affiliated and/or related and/or secondary entities, which were all collectively just one big *Ponzi* scheme. All of this was orchestrated by Defendants' principals, who actively promoted the scheme."

72.     As SUN pointed out in her class action, Plaintiff YANG is also a victim of Defendant's RICO activities and Defendants' illegal international commercial operations between the Unites and Taiwan.

73.    Plaintiff and all others in similar situations fall victim to Defendants' MLM frauds and schemes.

74.    Indeed, while Defendant HERBERT and DIANA represent to Plaintiff that iHealth products are made with natural ingredients, they are not.   Defendant HERBERT concealed the facts that iHealth products are made with "synthetic chemicals" against Plaintiff.

75.    Defendants accomplished their scheme by falsely advertising the ingredients of the iHealth products and by concealing the facts that the ingredients of the products are synthesized but not natural.

76.    This misrepresentation posed risks to Plaintiff's committed business investment in Taiwan relating iHealth because "synthetic chemical" is illegal in supplements in Taiwan.

77.    In fact, as the president and the high-rank officer of iHealth, Defendants HERBERT and DIANA have knowledge of the true facts that iHealth will never be able to have legal authorities to sell its products in Taiwan because its products contained "synthetic chemical," an illegal content in supplements in Taiwan. And yet, they still make false pretense to Plaintiffs and based on the false pretense, they took Plaintiffs money.

78.    Defendants, by engaging in the conduct described in this complaint, fraudulently transferred the funds from Plaintiffs to themselves.

79.    Defendants are improper recipients because they are not the proper recipients for Plaintiff's commission funds.

80.    Defendants, by engaging in the conduct described in this complaint, fraudulently transferred the funds from Plaintiffs to themselves.

81.    Defendants are improper recipients because they are not the proper recipients for Plaintiff's commission funds.

82.   Defendants' conducts alleged in this Complaint are fraudulent, theft by false pretenses are within the meaning of California Penal Code §496(c) as Plaintiff's down-lines and her commissions were stolen by Defendants.

83.   Defendants' conducts alleged in this Complaint are fraudulent, theft by false pretenses are within the meaning of California Penal Code §532 as Defendants provided false statements, withheld important information, and made promises they don't intend to keep to Plaintiff in order to obtain property from Plaintiff. Defendants are guilty of theft by false pretense.

84.   Defendants have engaged in constant and continuous unlawful, fraudulent and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, et seq.

85.   The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized and continues to victimize thousands of consumers.

86.   Defendants willfully violated Unfair Business Practices under Business & Professions Code Sections 17200, et seq.

87.   Defendants, acted in accord, with unity of interest, employed common strategies and practices that were failing to meet the requirements of the California and Federal laws and in fact were in violation of the laws.  Defendants' unlawful business acts are conducted in patterns and are ongoing. Accordingly, injunctive and declaratory relief are appropriate in this action.

88.   These misrepresentations of fact made to Plaintiff in writing, by telephone, and by WeChat, are additional predicate acts of mail and wire fraud performed by and in furtherance of the schemes. Plaintiff relied on all of these fraudulent representations and omissions to their own detriment and financial injury.

89.     As a direct and proximate result of the Defendants' unlawful fraudulent activity, Plaintiff suffered and continues to suffer damages in an amount to be proven at trial, but of at least $1,000,000.00.

90.     The schemes are an ongoing organization consisting of a variety of legal "persons" who associated for common and shared purposes.

91.     The Defendants coordinated with one another to implement and conceal the schemes. Each Defendant operated, managed and/or participated in the Investment Scheme, and the Enterprise Defendants worked together to execute the fraud. The schemes have functioned as a continuing enterprise since at least 2020.

92.     Each Defendant agreed to join this conspiracy, and each agreed to commit, facilitate, or participate in a pattern of fraudulent activity in furtherance of the conspiracy.

93.     Each Defendant agreed to join this conspiracy, and each agreed to do aiding and abetting in a pattern of fraudulent activity in furtherance of the conspiracy.

94.     During the conspiracy's existence, each of the Defendants agreed to the commission of an indefinite stream of predicate acts in furtherance of the schemes.

95.     Defendants agreed to and did commit multiple instances of mail and wire fraud in furtherance of the conspiracy by mailing and wiring fraudulent financial records, seal documents, and other contracts to investors including Plaintiff. The Defendants also devised the scheme, created and sent fake investment details to Plaintiff and other investors, and concealed the schemes from the Plaintiff in written and oral communications through mail, email, internet teleconferencing, WeChat, and telephone.

96.     At the same time Defendants began their illegal activities including defrauding Plaintiff, Defendants were not acting in good faith while attempting to

lure Plaintiffs to do business with iHealth membership and caused Plaintiff to be criminally prosecuted by the Taiwanese government, to damage her reputation, and financial damages. Defendants committed the acts set forth above with complete utter and reckless disregard of probability of causing Plaintiff YANG to suffer severe emotional distress.

97.    As an actual and proximate cause of Defendants' illegal activities including the conducts of defrauding Plaintiff YANG. Plaintiff YANG has suffered severe emotional distress because she has been living under the constant emotional nightmare of losing her investment in iHealth membership and facing legal consequences from the criminal prosecution by the Taiwanese government, to lose her reputation, and financial damages.

98.    As a direct and proximate result of the Defendants' unlawful fraudulent activity, Plaintiff suffered and continues to suffer damages in an amount to be proven at trial, but of at least approximately $1,000,000.00.

99.    In the circumstances alleged, it is unfair, unjust, and inequitable to allow the individual and corporate defendants to retain any such proceeds.

100.    In the interests of fairness, justice, and equity, this Court can and should issue an order and enter judgment: (a) Imposing a constructive trust over all such proceeds; (b) Decreeing that said defendants hold such funds in trust for the benefit of Plaintiff; and (c) Requiring these defendants to disgorge those funds and to restore those funds to Plaintiff.

101.    Plaintiff also seeks injunctive relief for a judicial injunction including an Order for Defendants to stop their wrongful and illegal acts against Plaintiff.

102.    Plaintiff seeks for equitable relief, including an Order for Defendants to stop their wrongful and illegal acts against Plaintiff.

103.    As direct and proximate result of Defendants conduct as described herein, Plaintiff has suffered irreparable harm through the illegal schemes.

104.   Plaintiff has a substantial likelihood of success on the merits of her claims.

105.   In addition, the magnitude of the injury being suffered due to Defendants' unlawful conduct heavily outweighs whatever hardship Defendants could allege or prove from being restrained as requested.

106.   A temporary restraining order and preliminary injunction will fulfill the purposes of these statutes.

107.   At this point, Plaintiff has no adequate remedy at law and are suffering immediate, imminent, and irreparable harm. Should Defendants' actions continue unabated, they will continue to harm Plaintiff's ability to conduct her business.

108.   Further, a substantial risk exists that in the absence of an appropriate order directing Defendants to preserve material evidence; Defendants will destroy or conceal evidence supporting the claims articulated in this Complaint.

109.   In the event that such evidence is lost, mishandled or destroyed, Plaintiff's ability to establish their claims and damages will be threatened with irreparable harm.

110.   There is reason to believe that in the absence of an immediate restraining order restraining the destruction or manipulation of material evidence, such items will be destroyed or concealed. Plaintiff also seeks a declaratory judgment as to the respective rights, remedies, and obligations of the parties.

111.   As the proximate result of the foregoing conduct, Defendants have been unjustly enriched. Plaintiff is entitled to full disgorgement of all profits and the funds obtained by Defendants, and each of them, as a result of their unlawful, unfair, and fraudulent acts as alleged herein.

112.   As a direct and proximate result of the conduct hereinabove alleged, Plaintiff was harmed by the wrongful conducts in the amount no less than approximately $1,000,000 plus pre-judgment interest.

113.   As a direct and proximate result of the conduct hereinabove alleged, Plaintiff was harmed by the wrongful conducts, and the Defendants' conducts were willful, wanton, malicious, and fraudulent, and made in conscious disregard of Plaintiff's rights, and Plaintiff is thus entitled to an award of punitive and exemplary damages against Defendants.

## FIRST CLAIM

## <u>VIOLATION OF 18 U.S.C. §§ 1961 (5), 1962(c)</u>

### (Against All Defendants)

114.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 113 of this Complaint for all purposes as though fully set forth herein.

115.   RICO prohibits the following conduct:

It shall be unlawful for **[1]** any person **[2]** employed by or associated with **[3]** any enterprise **[4]** engaged in, or the activities of which affect, interstate or foreign commerce, **[5]** to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs **[6]** through a pattern of racketeering activity or collection of unlawful debt. 18. U.S.C. § 1961-68 (numbering added to text of statute)

116.   A RICO "person" includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).  A RICO person can be either an individual or a corporate entity. A defendant can be both a RICO "person" and part of another RICO "enterprise." Plaintiff alleges the following:

- Each Defendant is a RICO "person."
- Each individual Defendant, *i.e.*, each person, combination of persons or combination one or more person and an entity as defined above, is a RICO "person."

- The Defendants are an "enterprise," (*e.g.*, a *de facto* corporation acting as a single legal entity, or, alternatively, an association in fact).

117.  The allegations contained in paragraphs 1-116 are incorporated here. The Defendants who perpetuated this scheme, described more fully below, constituted an enterprise "association-in-fact" that existed and continues to exist for a common purpose, the perpetuation of a fraudulent scheme on (primarily) Chinese-Americans who want to become distributors for iHealth products, and Chinese-nationals in Asia who likewise wish to do business with iHealth. The scheme commenced as early as 2019 and is ongoing to this day.

118.  As described more fully below, there was an identifiable hierarchy and framework within the enterprise.  The operation and management of the association in fact was generally led, at various times, by Defendants. The scheme was perpetuated through the use of Defendants' company's structure as a business entity that provided a vehicle for the implementation of the scheme. The organization and each individual Defendant also used the structure of the Defendants' MLM marketing distribution system to both defraud Plaintiff and others and benefit themselves.

119.  As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

120.  As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

121.  Defendants' conducts were committed with the conscious disregard of the rights of Plaintiff, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive and exemplary damages.

**SECOND CLAIM**

**FRAUD AND DECEIT**

**(Against all Defendants)**

122.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 121 of this Complaint for all purposes as though fully set forth herein.

123.   The fraudulent activities conducted by Defendants, like many schemes, were designed to lure Plaintiff and others in similar situations into marketing iHealth health products through illegal marketing channels (the "Scheme").

124.   Plaintiff and all others in similar situations are the victims, who run their independent distribution businesses for the health products without knowing the illegal and fraudulent nature of the business.

125.   Defendants accomplished their scheme by encouraging Plaintiff and others in similar situations to conduct business in regions and countries where iHealth had no legal authorization to do business, such as Taiwan and China.

126.   When Defendants made the representations, they knew them to be false.

127.   Defendants did know, and had a reason to know or suspect, that the representations were false, and they willfully made representations to Plaintiff.

128.   At the time the representations were made, Plaintiff did not know, and had no reason to know or suspect, that the representations were false, and they justifiably relied on the representations.

129.   Within the last three years, Plaintiff discovered the falsity and misleading character of the misrepresentations.

130.   As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

131.   As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

132.   Defendants' conducts were committed with the conscious disregard of the rights of Plaintiff, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive and exemplary damages.

## THIRD CLAIM

### FRAUDULENT CONCEALMENT

### (Against All Defendants)

133.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 132 of this Complaint for all purposes as though fully set forth herein.

134.   The fraudulent activities conducted by Defendants, as with so many schemes, were designed to lure Plaintiff and others in similar situations to market iHealth health products with false product information.

135.   Plaintiff and all others in similar situations are the victims, who run their independent distribution businesses for the health products without knowing the illegal and fraudulent nature of the business.

136.   Defendants accomplished their scheme by falsely advertising the ingredients of the iHealth products and by concealing the facts that the ingredients of the products are synthesized but not natural.

137.   When Defendants made the representations, they knew them to be false.

138.   Defendants did know, and had a reason to know or suspect, that the representations were false because they concealed material facts against Plaintiff and they willfully made representations to Plaintiff.

139.   At the time the representations were made, Plaintiff did not know, and had no reason to know or suspect, that the representations were false, and they justifiably relied on the representations.

140.   Within the last three years, Plaintiff discovered the falsity and misleading character of the misrepresentations.

141.   As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

142.   As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

143.   Defendants' conducts were committed with the conscious disregard of the rights of Plaintiff, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive and exemplary damages.

## FOURTH CLAIM

### NEGLIGENT MISREPRESENTATION – COUNT 1

### (Against All Defendants)

144.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 143 of this Complaint for all purposes as though fully set forth herein.

145.   The fraudulent activities conducted by Defendants, as with so many schemes, were designed to lure Plaintiff and all others in similar situations to market iHealth health products through illegal marketing channels (the "Scheme").

146.   Plaintiff and all others in similar situations are the victims, who run their independent distribution businesses for the health products without knowing the illegal and fraudulent nature of the business.

147.    Defendants accomplished their scheme by encouraging Plaintiff and all others in similar situations to conduct business in regions and countries such as Taiwan and China that iHealth has no legal status to do business.

148.    Regardless of whether Defendants honestly believed that the representations were true, Defendants had no reasonable grounds for believing the representations were true when they made the statements.

149.    Defendants intended that Plaintiff rely on the representations.

150.    Plaintiff reasonably relied on Defendants' representations.

151.    At the time the representations were made, Plaintiff did not know, and had no reason to know or suspect, that the representations were false, and they justifiably relied on the representations.

152.    Within the last three years, Plaintiff discovered the falsity and misleading character of the misrepresentations.

153.    As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

154.    As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

## FIFTH CLAIM

### NEGLIGENT MISREPRESENTATION – COUNT 2

#### (Against All Defendants)

155.    Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 154 of this Complaint for all purposes as though fully set forth herein.

156.    The fraudulent activities conducted by Defendants, as with so many schemes, were designed to lure Plaintiff and others in similar situations to market iHealth health products with false product information.

157. Plaintiff and all others in similar situations are the victims, who run their independent distribution businesses for the health products without knowing the illegal and fraudulent nature of the business.

158. Defendants accomplished their scheme by falsely advertising the ingredients of the iHealth products and by concealing the facts that the ingredients of the products are synthesized but not natural.

159. Regardless of whether Defendants honestly believed that the representations were true, Defendants had no reasonable grounds for believing the representations were true when they made the statements.

160. Defendants intended that Plaintiff rely on the representations.

161. Plaintiff reasonably relied on Defendants' representations.

162. At the time the representations were made, Plaintiff did not know, and had no reason to know or suspect, that the representations were false, and they justifiably relied on the representations.

163. Within the last three years, Plaintiff discovered the falsity and misleading character of the misrepresentations.

164. As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

165. As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

## SIXTH CLAIM

### Violation of California Penal Code §§484 and 532

### (Against All Defendants)

166. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 165 of this Complaint for all purposes as though fully set forth herein.

167.   The fraudulent activities conducted by Defendants, as with so many schemes, were designed to lure Plaintiff and others in similar situations to market iHealth health products with false product information.

168.   Plaintiff YANG is a victim of Defendant's RICO activities and Defendants' illegal international commercial operations between the United States and Taiwan.

169.   Plaintiff and all others in similar situations fall victim to Defendants' MLM frauds and schemes.

170.   Indeed, while Defendant HERBERT and DIANA represent to Plaintiff that iHealth products are made with natural ingredients, they are not.   Defendant HERBERT concealed the fact that iHealth products are made with "synthetic chemicals" against Plaintiff.

171.   This misrepresentation brought risks to Plaintiff's committed business investment in Taiwan related to iHealth because "synthetic chemical" is an illegal content for supplements in Taiwan.

172.   Defendants accomplished their scheme by falsely advertising the ingredients of the iHealth products and by concealing the facts that the ingredients of the products are not synthesized but not natural.

173.   In fact, as the president and the high rank officer of iHealth, Defendants HERBERT and DIANA have knowledge of the true facts that iHealth will never be able to have legal authorities to sell its product in Taiwan because its products contained "synthetic chemical," an illegal content for supplements in Taiwan.

174.   And yet, they still make false pretense to Plaintiffs and based on the false pretense, they took Plaintiffs money.

175.   Defendants intended that Plaintiff rely on the representations.

176.   Plaintiff reasonably relied on Defendants' representations.

177.   At the time the representations were made, Plaintiff did not know, and had no reason to know or suspect, that the representations were false, and they justifiably relied on the representations.

178.   Within the last three years, Plaintiff discovered the falsity and misleading character of the misrepresentations.

179.   Defendants, by engaging in the conduct described in this complaint, fraudulently transferred the funds from Plaintiffs to themselves.

180.   Defendants are improper recipients because they are not the proper recipients for Plaintiff's commission funds.

181.   Defendants' conducts alleged in this Complaint is fraudulent, theft by false pretenses are within the meaning of California Penal Code §496(c) as Plaintiff's down-lines and her commissions were stolen by Defendants.

182.   Defendants' conducts alleged in this Complaint are fraudulent, theft by false pretenses and falls within the meaning of California Penal Code §532 as Defendants provided false statements, withheld important information, and made promises they had no intention of fulfilling in order to obtain property from Plaintiff.  Defendants are guilty of theft by false pretenses.

183.   Under California Penal Code §532, anyone who provides false statements, withholds important information, or makes promises they don't intend to keep to another person in order to obtain property is guilty of theft by false pretenses. The crime of theft is defined in section 484 and that section provides as follows: "Every person who shall ... fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money ... or personal property ... is guilty of theft." Grand theft is committed, insofar as applicable to the present case, when the money or personal property taken exceeds $200 in value. (§ 487, subd. 1.) "Penal Code section 484, subdivision (a) describes

the acts constituting theft to include theft by false pretense, which is the consensual but fraudulent acquisition of property from its owner."   *Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1049  (also upholding civil liability under Penal Code Section 496).

184.   Violation of a criminal statute embodying a public policy is generally actionable even though no specific civil remedy is provided in the criminal statute. (*Michael R. v. Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1067).

185.   Civil actions lie in favor of crime victims. Violation of a criminal statute embodying a public policy is generally actionable even though no specific civil remedy is provided in the criminal statute. (*Michael R. v. Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1067 [205 Cal.Rptr.312]; see also *Laczko v. Jules Meyers, Inc.* (1969) 276 Cal.App.2d 293, 295 [80 Cal.Rptr. 798] ; see generally, 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 9, pp. 65-67.) Any injured member of the public for whose benefit the statute is enacted may bring an action. (*Michael R. v. Jeffrey B.*, supra, 158 Cal.App.3d at 1067; *Laczko v. Jules Meyers, Inc.*, supra, 276 Cal.App.2d at p. 295.)

186.   Plaintiff is a victim of Defendants' criminal acts.  As articulated in the opinion of *Michael R. v. Jeffrey B.*, violation of a criminal statute embodying a public policy is generally actionable even though no specific civil remedy is provided in the criminal statute.

187.   As a proximate and direct result of Defendants' aforementioned violations of penal code conducts, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

188.   The conducts of Defendants, and each of them, as herein described, are the direct and proximate causes of Plaintiff's damages.

189.   Plaintiff is informed and believes, and thereon alleges, that Defendant made the misrepresentations with malice, willfulness and the intent to defraud and

deceive Plaintiff, thereby entitling Plaintiff to an award of punitive and exemplary damages, and attorney fees.

## SEVENTH CLAIM

## INTENTIONAL INTERFERENCE OF CONTRACTUAL RELATIONS

## (Against All Defendants)

190. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 189 of this Complaint for all purposes as though fully set forth herein.

191. There is existence of a valid contract between Plaintiff and iHealth, a third party.

192. As the president and the high rank officer of iHealth, Defendants have knowledge of the contract.

193. Defendants' intentional acts designed to disrupt the contractual relationship between Plaintiff and iHealth.

194. Defendants' action caused actual disruption of the contractual relationship between Plaintiff and iHealth.

195. Defendants' disruption caused damages to Plaintiff resulting damage.

196. When Defendants made the representations, they knew them to be false.

197. As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

198. As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

199. Defendants' conducts were committed with the conscious disregard of the rights of Plaintiff, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive and exemplary damages.

## EIGHTH CLAIM

**(Violation of Foreign Corrupt Practices Act of 1977 (FCPA) 15 U.S.C. § 78dd-1, et seq.)**

**(Against All Defendants)**

200.  Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 199 of this Complaint for all purposes as though fully set forth herein.

201.  Defendants willfully violated Foreign Corrupt Practices Act of 1977 (FCPA) 15 U.S.C. § 78dd-1, et seq.

202.  In order to explore Chinese market, Defendants asked their Chinese American distributors to recruit Chinese nationals to become iHealth distributors without legal authorization from Chinese and Taiwanese government.

203.  Moreover, Defendants consistently promote iHealth recruiting events in Taiwan and China.  They made hefty profits in cash from the recruitments and utilized multiple channels to bring their profit back to the United States for them. Their conduct violates foreign laws and constitutes money laundering and tax evasion.

204.  Defendants' conduct violated Foreign Corrupt Practices Act of 1977 (FCPA) 15 U.S.C. § 78dd-1, et seq.

205.  As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

206.  As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

207.  Defendants' conducts were committed with the conscious disregard of the rights of Plaintiff, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive and exemplary damages.

1

## NINTH CLAIM

**Violation of California False Advertising Law - Business and Professions**
**Code § 17500**

**(Against All Defendants)**

208.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 207 of this Complaint for all purposes as though fully set forth herein.

209.   As discussed above, Defendants accomplished their scheme by falsely advertising the ingredients of the iHealth products and by concealing the facts that the ingredients of the products are not synthesized but not natural.

210.   The above-discussed statements made by Defendants are deceptive claims and falsely advertised to the public.

211.   Defendants willfully violated California False Advertising Law --- Business and Professions Code § 17500.

212.   As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

213.   As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

214.   Defendants' conducts were committed with the conscious disregard of the rights of Plaintiff, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive and exemplary damages.

## TENTH CLAIM

**Violation of California Business & Professions Code§§ 17200 et seq.**

**(Against All Defendants)**

215.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 214 of this Complaint for all purposes as though fully set forth herein.

216.   Defendants have engaged in constant and continuous unlawful, fraudulent and unfair business acts or practices, and unfair, deceptive, false and misleading advertising within the meaning of the California Business and Professions Code § 17200, et seq.

217.   The acts or practices alleged constitute a pattern of behavior, pursued as a wrongful business practice that has victimized and continues to victimize thousands of consumers.

218.   Defendants willfully violated Unfair Business Practices under Business & Professions Code Sections 17200, et seq.

219.   Acting in concert with one another, Defendants aided, abetted and conspired with each other in concealing information from Plaintiff.

220.   Defendants' illegal scheme constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professions Code Sections 17200, et seq.

221.   California Business and Professions Code Section 17200, et seq. prohibits businesses from engaging in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and was designed to protect competitors and consumers from illegal, fraudulent and "unfair" business practices.

222.   Defendants, and each of them, have engaged in fraudulent, unfair and deceptive business behavior and knowingly misrepresented material information.

223.   As described above, Defendants have violated the following California laws and Federal laws: (a) California's endless Chain Scheme Law (California's Penal Code § 327 and California Civil Code § 1689.2); (2) False Advertising Law (Business and Professions Code § 17500); (3) Foreign Corrupt Practices Act of 1977 (FCPA) 15 U.S.C. § 78dd-1, et seq., and (4) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.

224.   California's endless Chain Scheme Law (California's Penal Code § 327 and California Civil Code § 1689.2), California's Unfair Competition Law (Business and Professions Code § 17200 et seq. "UCL"), false and misleading income claims, False Advertising Law (Business and Professions Code § 17500), and Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. against all defendants for the operation and promotion of an inherently fraudulent endless chain scheme.

225.   Defendants' activities also constitute unfair business practices in violation of California Business & Professions Code Sections 17200 et seq., because Defendants' practices violate the above noted laws, and/or violate an established public policy and/or the practice is immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs and the public.

226.   Defendants, through at least the past four (4) years, have conducted a pattern of Unfair Business Practice under Business & Professions Code Sections 17200, et seq.

227.   UCL defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.  The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Id. § 17203.

228.   UCL prohibits businesses from engaging in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and was designed to protect competitors and consumers from illegal, fraudulent and "unfair" business practices.

229.   As a result of their unlawful acts, Defendants have reaped and continue to reap unfair benefits and unlawful profits at the expense of Plaintiff.

230.   As a direct and legal result of Defendants' illegal and unfair conducts to Plaintiff and general public, she has suffered and continues to suffer damages.

231.   Defendants are unjustly enriched. Plaintiff seeks disgorgement of profits from the unfair and unlawful business practices of Defendants and restitution of all monies and benefits which were unlawfully withheld, and for such orders or judgments, including the appointment of a receiver, as may be necessary to restore to Plaintiff any money or property which may have been acquired by means of unlawful or unfair business acts and practices.

### ELEVENTH CLAIM

### CIVIL CONSPIRACY

### (Against All Defendants)

232.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 231 of this Complaint for all purposes as though fully set forth herein.

233.   Plaintiff alleges that each and all of the acts herein alleged as to each Defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

234.   Each of the Defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this Complaint.

235.   The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiff of her constitutionally protected rights to property and of their rights under other laws as set forth herein.

236.   Each of the defendants herein committed an act in furtherance of the agreement. Injury was caused to the Plaintiff by the defendants as a consequence.

237.   Acted in concert with each other, aided, abetted and conspired with Defendants in making the concealment against Plaintiff.

238.   As a direct and legal result of Defendants' willful, malicious and unfair conducts to Plaintiff, she has suffered and continues to suffer damages.

239.   As a proximate and direct result of Defendants' aforementioned wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial, but estimated to exceed $1,000,000.00.

240.   Defendants' conducts were committed with the conscious disregard of the rights of Plaintiff, and with the intent to vex, injure or annoy, such as to constitute oppression, fraud or malice entitling Plaintiff to punitive damages.

## TWELFTH CLAIM

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

241.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 240 of this Complaint for all purposes as though fully set forth herein.

242.   At the same time Defendants began their illegal activities including the conducts of defrauding Plaintiff, Defendants were not acting in good faith while attempting to lure Plaintiffs to do business with iHealth membership and caused Plaintiff to be criminally prosecuted by the Taiwanese government, to lose her reputation, and financial damages.  Defendants committed the acts set forth above with complete utter and reckless disregard of probability of causing Plaintiff YANG to suffer severe emotional distress.

243.   As an actual and proximate cause of Defendants' illegal activities including the conducts of defrauding Plaintiff YANG. Plaintiff YANG has suffered severe emotional distress because she has been living under the constant emotional nightmare if losing her investment in iHealth membership and facing legal consequences from the criminally prosecuted by the Taiwanese government, to lose her reputations, and financial damages.

244.   The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people.  Plaintiff is entitled to punitive damages in an amount appropriate to punish Defendants and deter other from engaging in similar conduct. Defendants' wrongful acts caused Plaintiffs non-economic damages in an amount exceeding $250,000.00.

## THIRTEENTH CLAIM

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

245.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 244 of this Complaint for all purposes as though fully set forth herein.

246.   At the same time Defendants began their illegal activities including the conducts of defrauding Plaintiff, Defendants were not acting in good faith while attempting to lure Plaintiffs to do business with iHealth membership and caused Plaintiff to be criminally prosecuted by the Taiwanese government, to lose her reputations, and financial damages.  Defendants committed the acts set for above with complete utter and reckless disregard of probability of causing Plaintiff YANG to suffer severe emotional distress.

247.   As an actual and proximate cause of Defendants' illegal activities including the conducts of defrauding Plaintiff YANG. Plaintiff YANG has suffered severe emotional distress because she has been living under the constant emotional nightmare if losing her investment in iHealth membership and facing legal consequences from the criminally prosecuted by the Taiwanese government, to lose her reputation, and financial damages.

248.   The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people.  Defendants' wrongful acts if

they were not done intentionally, they were done in neglect.  The wrongful acts caused Plaintiffs non-economic damages in the amount exceeds $250,000.00.

## FOURTEENTH CLAIM

### TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

### (Against All Defendants)

249.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 248 of this Complaint for all purposes as though fully set forth herein.

250.   Plaintiff seeks injunctive relief for a judicial injunction including an Order for Defendants to stop their wrongful and illegal acts against Plaintiff.

251.   Plaintiff seeks for equitable relief, including an Order for Defendants to stop their wrongful and illegal acts against Plaintiff.

252.   As direct and proximate result of Defendants conduct as described herein, Plaintiff has suffered irreparable harm through the illegal schemes.

253.   Plaintiff has a substantial likelihood of success on the merits of her claims.

254.   In addition, the magnitude of the injury being suffered due to Defendants' unlawful conduct heavily outweighs whatever hardship Defendants could allege or prove from being restrained as requested.

255.   A temporary restraining order and preliminary injunction will fulfill the purposes of these statutes.

256.   At this point, Plaintiff has no adequate remedy at law and are suffering immediate, imminent, and irreparable harm. Should Defendants' actions continue unabated, they will continue to harm Plaintiff's ability to conduct her business.

257.   Further, a substantial risk exists that in the absence of an appropriate order directing Defendants to preserve material evidence; Defendants will destroy or conceal evidence supporting the claims articulated in this Complaint.

258.   In the event that such evidence is lost, mishandled or destroyed,

Plaintiff's ability to establish their claims and damages will be threatened with irreparable harm.

259.   There is reason to believe that in the absence of an immediate restraining order restraining the destruction or manipulation of material evidence, such items will be destroyed or concealed.

260.   Moreover, the granting of the injunctive relief requested herein will not adversely affect any public policy or public interest but will instead promote same.

261.   Plaintiff as not provided advance notice to Defendants of this action or the relief sought herein on the grounds that to do so would accelerate the risk of destruction of evidence which Plaintiff is seeking to prevent.

262.   Unless Defendants are restrained from continuing these unlawful, unfair, and fraudulent business acts or practices, Plaintiff will suffer irreparable injury.

## FIFTEENTH CLAIM

### DECLRATORY RELIEF

### (Against All Defendants)

263.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 262 of this Complaint for all purposes as though fully set forth herein.

264.   28 U.S.C § 2201 provides that "any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Declaratory relief is not intended to redress past wrongs, its purpose is to resolve uncertainties or disputes that may result in future litigation.

265.   An actual controversy has arisen between Plaintiff and Defendants on the other, as to their respective rights, remedies and obligations with regard to Defendants' unlawful conduct, as alleged herein.

266.   Accordingly, injunctive and declaratory relief is appropriate.  Plaintiff therefore seeks a declaratory judgment as to the respective rights, remedies, and obligations of the parties.

## SIXTEENTH CLAIM

### UNJUST ENRICHMENT

### (Against All Defendants)

267.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 266 of this Complaint for all purposes as though fully set forth herein.

268.   As a result of their unlawful acts, Defendants have reaped and continue to reap unfair benefits and unlawful profits at the expense of Plaintiff.

269.   As a direct and legal result of Defendants' illegal and unfair conducts to Plaintiff and general public, she has suffered and continues to suffer damages.

270.   Defendants are unjustly enriched.

271.   As a direct and proximate result of the foregoing conduct, Defendants have been unjustly enriched. Plaintiff is entitled to full disgorgement of all profits obtained by Defendants as a result of their unlawful, unfair, and fraudulent acts as alleged herein.

### PRAYER

**WHEREFORE,** Plaintiff JENNIFER YANG also known as MEI HWA YANG prays for judgment against Defendants in her favor and that she be given the following relief:

1. For actual and compensatory damages of $1,250,000.00;

2. For punitive and exemplary damages;

3. To recover treble damages and civil penalties under the RICO Act (8 U.S.C. " 1964(c)), and to recover damages and other monetary relief under the common law theories of unjust enrichment;

4. To recover to recover damages and other monetary relief under the Unfair Business Practices (Business & Professions Code Sections 17200, et seq.;

5. For an order preliminarily and permanently restraining Defendants from engaging in the aforementioned violations enjoining Defendants from further unfair, unlawful, fraudulent and/or deceptive acts;

6. For disgorgement of profits from the unfair and unlawful business practices of Defendants and restitution of all monies and benefits which were unlawfully withheld, and for such orders or judgments, including the appointment of a receiver, as may be necessary to restore to Plaintiffs any money or property which may have been acquired by means of unlawful or unfair business acts and practices;

7. For an award of attorneys' fees, expenses, expert fees and costs incurred by plaintiffs in vindicating their rights including fees;

8. For appropriate and equitable relief; and

9. For all such other and further relief that the Court may deem just and proper.

Dated:  September 15, 2023          **LAW OFFICE OF MARY LIU**


_____

HUI LIU, ESQ., ATTORNEY FOR
PLAINTIFF JENNIFER YANG ALSO
KNOWN AS MEI HWA YANG

# JURY TRIAL DEMANDED

Plaintiff JENNIFER YANG also known as MEI HWA YANG hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated:  September 15, 2023          **LAW OFFICE OF MARY LIU**

_____

HUI LIU, ESQ., ATTORNEY FOR
PLAINTIFF JENNIFER YANG ALSO
KNOWN AS MEI HWA YANG